Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK YOUNGERS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | No. 2:15-cv-03496-FMO-JEM |
| Plaintiff, | **RESPONSE TO ORDER TO SHOW CAUSE** |
| v. | CLASS ACTION |
| VIRTUS INVESTMENT PARTNERS, INC., VIRTUS INVESTMENT ADVISERS, INC., VIRTUS OPPORTUNITIES TRUST, FSQUARED INVESTMENTS, INC., FSQUARED ALTERNATIVE ADVISORS, LLC, F-SQUARED INSTITUTIONAL ADVISORS, LLC, FSQUARED INVESTMENT MANAGEMENT, LLC, EUCLID ADVISORS, LLC, VP DISTRIBUTORS, LLC, GEORGE R. AYLWARD, MICHAEL A. ANGERTHAL, W. PATRICK BRADLEY, LEROY KEITH, JR., PHILIP R. MCLOUGHLIN, | JUDGE: Hon. Fernando M. Olguin |

1
2
3
4
5
6
7
8

GERALDINE M. MCNAMARA,           )
JAMES M. OATES, RICHARD E.       )
SEGERSON, FERDINAND L. J.        )
VREDONCK, FRANCIS G.             )
WALTMAN, MARK S. FLYNN,          )
HOWARD PRESENT, AMY              )
ROBINSON                         )
                                 )
        Defendants.              )
                                 )
                                 )

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Contents

I.  INTRODUCTION ........................................................................................1

II.  PERTINENT BACKGROUND ....................................................................2

III. ARGUMENT ..............................................................................................4

  A.  This Action Should Not Be Consolidated with the New York Action ..........4

   1.  Count 1, for Violation of Exchange Act Rule 10b-5(b) Has Little Overlap with the New York Action .......................................................4

    a.  There is Little Overlap As to Falsity Because Falsity Is Not at Issue ......5

    b.  There is Little Overlap As to Scienter Because, With One Exception, The Defendants are Different ................................................5

    c.  There Is No Overlap as to Loss Causation ...........................................6

    d.  There is No Overlap as to Reliance .......................................................6

    e.  There is No Overlap as to Damages .....................................................6

   2.  Count 2, a "Fraudulent Scheme" Claim, has No Overlap with the New York Action ...............................................................................7

   3.  Count 3, for violation of Section 20(a) of the Exchange Act Has No Overlap with the New York Action ...................................................7

   4.  Count 4, for Violation of Section 11 of the Securities Act Has No Overlap with the New York Action ...................................................8

   5.  Count 5, For Violation of Section 12(a)(2) of the Securities Act, has No Overlap with the New York Action ...................................................8

   6.  Count 6, for Violation of Section 15 of the Securities Act, Has No Overlap with the New York Action ...................................................9

  B.  In the Absence of a Need to Consolidate, Transfer Is Unwarranted ..........9

1.    Plaintiffs' Choice of Forum Favors California ..............................................9

2.    Convenience of the Parties Favors California ..........................................10

3.    Convenience of Witnesses Favors California..........................................10

4.    Because Evidence is Electronic, Ease of Access to Evidence is Not Relevant .................................................................................................10

5.    This Court is Fully Familiar with the Governing Law ..............................11

6.    The Feasibility of Consolidation with Other Claims ...............................11

7.    The Southern District of New York Has No Local Interest in this Matter 11

8.    A Comparison of Case Congestion Favors the Central District of California .........................................................................................11

**Cases**

*Amador v. Logistics Express, Inc.*,

    2010 WL 3489038 (C.D. Cal. Aug. 27, 2010)........................................................4

*Basic v. Levinson*,

    485 U.S. 224, 108 S.Ct. 978 L.Ed.2d 194 (1988)................................................6

*Burnett v. Rowzee*,

    2008 WL 638503 (C.D. Cal. Feb. 11, 2008) ......................................................7

*Ctr. for Food Safety v. Vilsack*,

    2010 WL 4392847 (N.D. Cal. Oct. 29, 2010) ....................................................9

*Howard v. Everex Sys., Inc.*,

    2000 WL 1434618 (9th Cir. Sept. 29, 2000) ....................................................7

*In re CBT Grp. PLC Sec. Litig.*,

    2000 WL 33339615 (N.D. Cal. Dec. 29, 2000)................................................9

*In re Century Aluminum Co. Sec. Litig.*,

    2013 WL 1633094 (9th Cir. Apr. 17, 2013) ......................................................8

*In re Metro. Sec. Litig.*,

    2007 WL 3274893 (E.D. Wash. Nov. 5, 2007) ..................................................8

*Mahapatra v. Truecar, Inc.*,

    15-CV-03979 (C.D. Cal 2015)..........................................................................11

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,

    2011 WL 4389689 (C.D. Cal. May 5, 2011) ......................................................8

*Masillionis. v. Silver Wheaton Corp.*,

    15-CV-05146 (C.D. Cal 2015)..........................................................................11

*Messerli v. Root9b Technologies, Inc.*,

    15-CV-04750 (C.D. Cal 2015)..........................................................................11

*Open Rd. Ventures, LLC v. Daniel*,

    2009 WL 2365857 (N.D. Cal. July 30, 2009)....................................................9

1

*Snellink v. Gulf Res., Inc.*,

2     2012 WL 1693979 (C.D. Cal. May 15, 2012) ........................................................4

3 *Szegedy v. Keystone Food Products, Inc.*,

4     2009 WL 2767683 (C.D. Cal. Aug. 26, 2009)......................................................10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mark Youngers, Kimball Lloyd, and Frances Briggs (collectively "Lead Plaintiffs") respectfully submit this response to the Court's Order to Show Cause as to why this case should not be transferred for consolidation with the action *In re Virtus Investment Partners Inc. Securities Litigation*, 15-cv-01249 (S.D.N.Y. 2015) currently pending in the United States District Court for the Southern District of New York.

## I.    INTRODUCTION

This action is brought by investors in several mutual funds affiliated with Defendant Virtus Investment Partners, Inc. ("Virtus"). Virtus is a publicly listed company that owns an investment management firm, Virtus Investment Advisers, Inc. ("VIA"). VIA is the manager of the mutual funds whose shares are at issue in this case. Plaintiffs allege that Defendants sold the mutual funds to them by misrepresenting that the funds were managed based on investment strategies that had been in use successfully since 2001, and the strategies had produced investment returns that had outperformed the S&P 500.  In reality, the strategies were invented in 2008, and Defendants misleadingly supplied back-tested (hypothetical not actual) investment returns data for the earlier period.

There is also an action currently pending in the Southern District of New York, brought by shareholders of the publicly traded holding company, Virtus, alleging that the back-testing rendered Virtus' statements to its public stockholders false and misleading as well.  While the two cases have a degree of overlap – both stem from the fact that the funds used back-tested data, in practical terms there will be no gain in efficiency by consolidating the two cases.  Plaintiffs in this case are not shareholders of Virtus – they are customers of the mutual funds for which its subsidiary serves as investment advisor.  As a result, Plaintiffs' in this case allege causes of actions against several individuals who were not named as defendants in the New York action, and vice versa.  Therefore, the crucial question of scienter will be distinct as between the two cases.  Similarly,

1

establishing reliance and loss causation will be factually distinct as well.   In addition, the only common fact between the two cases – that the funds relied on back-tested data, is not actually in dispute, because Defendant F-Squared Investments, Inc. has admitted it to the SEC.   In addition, this complaint alleges several causes of action for violation of the Securities Act that did not appear in the New York Action.   Therefore, there is little likelihood that, in the event this case is transferred to the Southern District of New York, the cases will be consolidated.

In the absence of any likelihood that the Southern District of New York will consolidate the two cases, transfer is not warranted.   Plaintiffs' choice of forum should be given significant weight, as should the fact that one lead plaintiff is located in California.   By contrast, Plaintiffs know of no witnesses or evidence located in New York, both locations are equally equipped to address the legal issues, New York has no local interest in this case, and the Southern District of New York is more congested than this Court.

## II.   PERTINENT BACKGROUND

On May 8, 2015, The Rosen Law Firm filed this action against Defendants[1] for claims under Sections 10(b) and 20(a) of the Exchange Act as well as Sections 11 and 15 of the Securities Act.   This action was filed on behalf of purchasers of Virtus Allocator Premium  Fund Class A, C, and I shares (VAAAX, VAACX, VAISX), Virtus  Rotation Fund Class A, C, and I shares, (PWBAX, PWBCX, VARIX), Virtus Dynamic  Fund Class A, B, C, and I shares (EMNAX, EMNBX,

[1] "Defendants" refers to, collectively: Virtus Investment Partners, Inc., Virtus Investment Advisers, Inc., Virtus Opportunities Trust, F-Squared Investments, Inc., F-Squared Alternative Advisors, LLC, F-Squared Institutional Advisors, LLC, F-Squared Investment Management, LLC, Euclid Advisors, LLC, VP Distributors, LLC,   R. Aylward, Michael A. Angerthal, W. Patrick Bradley, Leroy Keith, Jr., Philip R. Mcloughlin, Geraldine M. Mcnamara, James M. Oates, Richard E. Segerson, Ferdinand L. J. Verdonck, Francis G. Waltman, Mark S. Flynn, Howard Present, and Amy Robinson.

EMNCX, VIMNX), Virtus Global Premium  Fund Class A, C, and I shares (VGPAX, VGPCX, VGPIX), and Virtus Premium  Fund Class A, C, and I shares (VAPAX, VAPCX, VAPIX) (the "AlphaSector Funds") between May 8, 2010 and December 22, 2014, inclusive (the "Class Period"). ¶3[2].  These funds were advised by Defendant Virtus Investment Advisers, Inc., a wholly owned subsidiary of Defendant Virtus Investment Partners, Inc., ("Virtus"). ¶¶11, 36. Defendants affiliated with Defendant F-Squared Investments, Inc. ("F-Squared") are subadvisors to the various funds.  ¶12.

As the Complaint in this case alleges, the AlphaSector Funds' registration statements and prospectuses identified F-Squared as the creator of the strategy on which the AlphaSector Funds relied.  ¶36.  The registration statements and prospectuses presented two indices based on the Strategies (the "AlphaSector Indices") dating back to 2003.  ¶37.  Defendants claimed that the overall strategy was implemented with live assets dating back to April 2001.  ¶4.  In reality, however, the strategy was created in September 2008 with all prior data based on a back-test.  *Id.* A "back test" means the results were based on a simulation of a hypothetical investment portfolio constructed using the investment strategy and tested on historical stock market data, rather than actual investment returns. In addition, F-Squared incorrectly applied market data in conducting the back test, applying the data one week before the price changes in securities that caused the signals.  ¶5.  As a result, the advertised historical performance from April 2001 to September 2008 was based on a back-test that was rigged.  *Id.*  F-Squared's former CEO, Defendant Howard Present, admitted as much to the SEC, as detailed in the SEC's Order Instituting Administrative and Cease and Desist Proceedings ("SEC Order") (attached to the Declaration of Laurence Rosen as Exhibit 1).

---

[2] Unless otherwise indicated, citations to ¶__ refer to the Complaint.

In addition to the instant lawsuit, as a result of Defendants' actions a Virtus Shareholder, Tom Cummins, filed a class action lawsuit against Virtus Investment Partners, Inc., George R. Aylward, Michael A. Angerthal, Francis G. Waltman and Mark S. Flynn for securities fraud in the United States District Court in the Southern District of New York. *Cummins v. Virtus Investment Partners Inc.*, 15-01249 (S.D.N.Y. 2015) (the "New York Action").  The Complaint filed in that lawsuit (the "New York Complaint") alleged that Virtus, which is a publicly traded company, misrepresented to its investors that it was monitoring the quality of F-Squared. New York Complaint ¶124.

## III.   ARGUMENT

### A.    This Action Should Not Be Consolidated with the New York Action

Courts have discretion to consolidate actions involving common issues of law and fact. *Amador v. Logistics Express, Inc.*, 2010 WL 3489038, at *1 (C.D. Cal. Aug. 27, 2010).  For the reasons set forth below, it is unlikely that, in the event that this action is transferred to New York, it will be consolidated with the New York Action, because the degree of factual and legal overlap between the two cases is low.

#### 1.    Count 1, for violation of Exchange Act Rule 10b-5(b) Has Little Overlap with the New York Action

Count 1 of the Complaint alleges violations of Section 10(b)(5) of the Exchange Act.  ¶¶54-64.  The elements for a violation of 10(b) are: "(1) falsity, i.e., a material misrepresentation or omission, (2) scienter, i.e., a wrongful state of mind, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss." *Snellink v. Gulf Res., Inc.*, 2012 WL 1693979 (C.D. Cal. May 15, 2012).  There will be few overlapping factual and legal questions with respect to establishing these elements in the two actions.

### a.   There is Little Overlap As to Falsity Because Falsity Is Not at Issue

Falsity is not an issue in this case because Howard Present, the former CEO of F-Squared, has admitted that the statements and omissions at issue in this case were false.   As the SEC Order sets forth, F-Squared has admitted that the AlphaSector Strategy's results were back-tested, and not based on real trading data.   SEC Order, Appendix A, at ¶ at 7.   F-Squared also admitted that it falsely advertised that "the in/out ETF signals that formed the basis of the AlphaSector index returns had been used to manage client assets from April 2001 to September 2008" and that "the in/out ETF signals resulted in a track record that significantly outperformed the S&P 500 Index from April 2001 to September 2008". *Id.* at 4. Similarly, in this case the AlphaSector Funds' registration statement identified annual performance dating back to 2003 without disclosing that the results were backdated.   ¶37.   The New York Action, by contrast, will be litigating whether Virtus' filings with the SEC directed to Virtus' stockholders were rendered inaccurate by the failure to disclose the back-testing. But Virtus' statements at issue are different, and contained in different documents, than those in this case. Thus, the only common issue – the back-testing, is not in dispute, and the only issues that are in dispute with respect to falsity – whether the back-testing renders the statements false, are not common, because they pertain to different documents.

### b.   There is Little Overlap As to Scienter Because, With One Exception, The Defendants are Different

There is little overlap as to scienter because the 10b-5 counts in the respective actions only include one defendant in common.   The New York Complaint names as defendants Virtus, its CEO Aylward, its CFO Michael A. Angerthal, its head of product management Francis G. Waltman, its and its General Counsel Mark S. Flynn.   Of those, only Aylward is a defendant as to the 10b-5(b) cause of action in this case.   This case, by contrast, alleges causes of

action against the trustees of the Virtus Opportunities trust: Defendants Bradley, Keith, Mcloughlin, Mcnamara, Oates, Segerson, and Verdonck. These individuals are not Defendants in the New York Action. Because the scienter element relates to what each particular defendant knows, the lack of overlap as to defendants translates to a lack of overlap as to the factual and legal questions at issue.

### c.    There Is No Overlap as to Loss Causation

There is no overlap as to loss causation because the Plaintiffs in the respective actions owned different securities. The plaintiffs in the New York Action owned common stock of Virtus, and lost money because the price of Virtus stock declined when the fraud was revealed. That question simply has no relevance here. The Plaintiffs here lost money because of the poor performance of the AlphaSector Funds, due to Defendants' decision to use the AlphaSector strategy. And the decline in value in the AlphaSector Funds due to Defendants' fraud will have no relevance in the New York Action.

### d.    There is No Overlap as to Reliance

There is no overlap as to reliance because the two cases will establish reliance through fundamentally different presumptions. It is likely that Defendants in the New York Action will establish a presumption of reliance by showing that there was a fraud on the market with respect to Virtus common stock, and that the market for Virtus stock was efficient. *See Basic v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). But proof of that presumption will do nothing at all to establish that Virtus mutual fund investors relied on Defendants' misrepresentations.

### e.    There is No Overlap as to Damages

There is no overlap as to damages because the value of the securities in each action are calculated in different ways. Virtus common stock is traded on the NASDAQ market and its value is determined by the market price for its shares. The AlphaSector Funds' value is determined by their Net Asset Value – or NAV –

6

a calculation of the weighted average prices of all of the individual securities held by the fund.  Therefore, the calculation of damages will be based on two totally separate metrics.

### 2.     Count 2, a "Fraudulent Scheme" Claim, has No Overlap with the New York Action

Count 2 of the Complaint alleges violation of Section 10 of the Exchange Act pursuant to a "fraudulent scheme" theory.  ¶¶65-75. Plaintiffs in the New York Action do not advance "fraudulent scheme" causes of action, and therefore there is no overlap between the two counts.  A fraudulent scheme theory of liability under Section 10(b)(5) proceeds by establishing that Defendants committed deceptive acts as part of a larger scheme to defraud the securities market.  *Burnett v. Rowzee*, 2008 WL 638503 (C.D. Cal. Feb. 11, 2008).  The complaint in this action alleges violation pursuant to a fraudulent scheme theory, but the New York Action does not.  Therefore, there is no overlap between this cause of action and the New York Action.

### 3.     Count 3, for Violation of Section 20(a) of the Exchange Act Has No Overlap with the New York Action

Count 3 of the Complaint alleges violations of Section 20(a) of the Exchange Act.  ¶76-81. To establish control person liability under Section 20, a plaintiff must show "(1) a primary violation of federal securities laws … and (2) that the defendant exercised actual power or control over the primary violator." *Howard v. Everex Sys., Inc.*, 2000 WL 1434618 (9th Cir. Sept. 29, 2000). Plaintiff need not show that the defendant was a culpable participant in the violation, but defendant may assert a "good faith" defense. *Id.*

Because the primary violators in the two cases are different, the issue of control will be very different as to the two cases.  Defendants in the New York Action are accused of being control persons of Virtus.  But Virtus is not alleged to be a primary violator in this action.  Instead, in this action the issue is which of the

defendants are control persons of Virtus Opportunities Trust, which issued the registration statements at issue here.  The question of control will therefore be factually and legally distinct in the two cases because the controlled entities, as well as many of the Defendants accused of controlling them, will be different.

> **4.      Count 4, for Violation of Section 11 of the Securities Act Has No Overlap with the New York Action**

Count 4 of the Complaint alleges violation of Section 11 of the Securities Act.  ¶¶82-92.  A Section 11 claim has two elements. First, the plaintiff must prove that the registration statement contained a misstatement or an omission. Second, the plaintiff must prove that the misstatement or omission was material. *In re Metro. Sec. Litig.*, 2007 WL 3274893 (E.D. Wash. Nov. 5, 2007).  Only those who purchased securities issued under the false or misleading registration statement have a cause of action.  *In re Century Aluminum Co. Sec. Litig.*, 2013 WL 1633094 (9th Cir. Apr. 17, 2013).  Plaintiffs in the New York Action have not asserted a cause of action for violation of Section 11, nor can they with respect to the registration statements for the AlphaSector Funds, because Virtus common stock was not issued under those registration statements.  Therefore, there is no factual overlap as to this cause of action.

> **5.      Count 5, For Violation of Section 12(a)(2 of the Securities Act, has No Overlap with the New York Action**

Count 5 of the Complaint alleges violations of Section 12(a)(2) of the Securities Act.  ¶¶ 93-101.  Section 12(a)(2) only applies to sales of securities pursuant to a prospectus or oral communications.  *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *8 (C.D. Cal. May 5, 2011). Again, Plaintiffs in the New York Action have not alleged a cause of action under Section 12(a)(2) and because the two cases involve different securities, and were issued under different prospectuses, they could not allege a cause of action as to the same prospectuses or oral communications.

**6.      Count 6, for Violation of Section 15 of the Securities Act, Has No Overlap with the New York Action**

Count 6 of the Complaint alleges violations of Section 15 of the Securities Act for controlling a person who violated Sections 11 or 12. A Section 15 plaintiff must allege a primary violation of Sections 11 or 12 of the Securities Act and that the defendant directly or indirectly controlled the violator. *In re CBT Grp. PLC Sec. Litig.*, 2000 WL 33339615, at *4 (N.D. Cal. Dec. 29, 2000).   Because, as discussed above, Plaintiffs in the New York Action have not and cannot set forth a cause of action under Sections 11 or 12 analogous to the one alleged by Plaintiffs here, there is no overlap as to this cause of action either.

**B.      In the Absence of a Need to Consolidate, Transfer Is Unwarranted**

In evaluating a motion to transfer, Courts in this Circuit have recognized the following factors:

"(1) plaintiff's choice of forum,

(2) convenience of the parties,

(3) convenience of the witnesses,

(4) ease of access to the evidence,

(5) familiarity of each forum with the applicable law,

(6) feasibility of consolidation of other claims,

(7) any local interest in the controversy, and

(8) the relative court congestion and time of trial in each forum."

*Open Rd. Ventures, LLC v. Daniel*, 2009 WL 2365857, at *5 (N.D. Cal. July 30, 2009).

**1.      Plaintiffs' Choice of Forum Favors California**

Plaintiffs' choice of forum in the Central District of California is entitled to considerable weight.  *Ctr. for Food Safety v. Vilsack*, 2010 WL 4392847, at *1 (N.D. Cal. Oct. 29, 2010).   Co-Lead Plaintiff Kimball Lloyd is a resident of

9

California, and the Rosen Law Firm has offices in California.  This factor favors California.

### 2.      Convenience of the Parties Favors California

The Central District of California is a more convenient location for Plaintiffs.  As previously mentioned, Plaintiff Lloyd is located in California, while Plaintiffs Briggs and Youngers, residents of Texas and Kansas respectively, find the Central District of California to be readily accessible.

Plaintiffs are not aware of any connection between Defendants and New York, except for the fact that Defendants Euclid Advisors and Virtus have offices in the same office building in Manhattan, the size of which is unknown to Plaintiffs.  To the extent that Defendants have particular reasons for finding New York more convenient, they are better positioned to identify such reasons.

### 3.      Convenience of Witnesses Favors California

As stated above, Plaintiff Lloyd is located in California.  By contrast, Plaintiffs are unaware of any witnesses who are located in New York.  Virtus has offices in Providence, Rhode Island, Westborough, Massachusetts, and Hartford, Connecticut, and New York, while F-Squared's offices are located in Wellesly, Massachusetts.  Plaintiffs are unaware if the witnesses with relevant facts are located in New York. Therefore, while the witnesses are widely distributed geographically, California has more witnesses than New York.

### 4.      Because Evidence is Electronic, Ease of Access to Evidence is Not Relevant

As the Central District has recently noted, "ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations." *Szegedy v. Keystone Food Products, Inc.*, 2009 WL 2767683, at *6 (C.D. Cal. Aug. 26, 2009).  Because discovery has not commenced Plaintiffs are not aware of where Defendants' documents are stored, but given the fact that neither Virtus nor F-

Squared is headquartered in New York, it is unlikely that the bulk of discoverable documents are stored in New York. In either event, documents will be transferred across state lines, but given that such documents will be stored in electronic form, this will be no great burden in any case.

### 5.    This Court is Fully Familiar with the Governing Law

The Central District of California has adjudicated numerous securities class actions, with several filed this year. See, e.g. *Masillionis. v. Silver Wheaton Corp.*, 15-CV-05146 (C.D. Cal 2015); *Messerli v. Root9b Technologies, Inc.*, 15-CV-04750 (C.D. Cal 2015); *Mahapatra v. Truecar, Inc.*, 15-CV-03979 (C.D. Cal 2015). As such, this factor does not weigh in favor of transfer.

### 6.    The Feasibility of Consolidation with Other Claims

As noted above, it would not be feasible to consolidate this action with the New York Action. However, even if such consolidation were feasible, the other factors discussed herein weigh against transfer.

### 7.    The Southern District of New York Has No Local Interest in this Matter

No causes of action under New York law have been alleged. Instead, the causes of action alleged in this Complaint pertain to the securities laws, the enforcement of which are a national interest. Therefore, New York has no local interest in this matter.

### 8.    A Comparison of Case Congestion Favors the Central District of California

As of March 31, 2015, there were 664 actions pending per judgeship in the Southern District of New York. See Federal Case Management Statistics, March 2015, attached as Exhibit 2 to the Declaration of Laurence Rosen, at 2. In the Central District of California, there were 449. *Id.* at 9. The New York court is almost 50% busier than this Court. Therefore, a comparison of judicial congestion favors the Central District of California.

**IV. CONCLUSION**

      For the foregoing reasons, Plaintiffs respectfully request that the instant action not be transferred to the Southern District of New York.

Dated: July 31, 2015          Respectfully submitted,

                         THE ROSEN LAW FIRM, P.A.

                         /s/ Laurence M.Rosen, Esq.
                         Laurence M. Rosen, Esq. (SBN 219683)
                         355 South Grand Avenue, Suite 2450
                         Los Angeles, CA 90071
                         Telephone: (213) 785-2610
                         Facsimile: (213) 226-4684
                         Email: lrosen@rosenlegal.com
                         Lead Counsel for Plaintiff